IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



| | | |
|---|---|---|
| **TIGI LINEA CORP.,** | § | |
| | § | |
| **Plaintiff,** | § | **LEAD CASE 4:19-cv-00840-RWS-KPJ** |
| | § | |
| **v.** | § | **CONSOLIDATED CASE 4:20-cv-087** |
| | § | |
| **PROFESSIONAL PRODUCTS GROUP,** | § | |
| **LLC,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Professional Products Group, LLC's ("PPG") Motion to Compel Improperly Redacted Business Documents (the "Motion") (Dkt. 128; redacted at Dkt. 129). TIGI Linea Corp. ("TIGI") filed a response (Dkt. 133), PPG filed a reply (Dkt. 135; redacted at Dkt. 136), TIGI filed a sur-reply (Dkt. 140), and PPG filed a supplemental memorandum in support of the Motion (Dkt. 141). The Court held a hearing on the Motion on December 9, 2020 (the "Hearing"). *See* Dkt. 137.

Having considered the Motion and the responses thereto, the Motion (Dkt. 128) is **GRANTED IN PART** and **DENIED IN PART**.

## I.     BACKGROUND

TIGI is a manufacturer and seller of hair care, body, cosmetic, and electrical appliance products throughout the world. *See* Dkt. 13-1 at 1. PPG is a company that "distributes professional hair care products from manufacturers directly to retailers, as well as to distributors and wholesalers that sell professional hair care products." *Id.* at 1. PPG markets its distribution services as offering retailers a "one stop solution" for professional hair care products of various brands. *Id.* at 9–10. PPG currently maintains both exclusive and non-exclusive distributor relationships with

1

other beauty and hair care companies, such as Sebastian, American Crew, and Sexy Hair. *See* Dkt. 67.

In or around October 2011, sometime after PPG began distributing TIGI products on behalf of TIGI, PPG and TIGI signed the Exclusive Supply and Distribution Agreement[1] (the "Exclusive Agreement") (Dkt. 1-1) regarding "the relationship between [PPG and TIGI] with the [sic] respect to the distribution and sale of TIGI professional hair care, body, cosmetics, and electrical appliance products . . . directly to mass retailers and to distributors/wholesalers who supply and sell TIGI Products to mass retail stores." Dkt. 1-1 at 2; *see also* Dkt. 69 (TIGI Exhibit 27); Dkt. 67. The Exclusive Agreement states, in relevant part:

> The [Exclusive] Agreement shall be interpreted as granting PPG an exclusive right to sell TIGI Products to distributors and wholesalers that sell to mass retailers and to sell TIGI Products directly to mass retail stores such as Wal-mart, club stores, drug store chains, food stores, or wherever professional hair-care products can be found located in America (the "North American Mass Retail Market"). TIGI shall not sell, directly or indirectly, to the North American Mass Retail Market other than to PPG without the prior written approval of PPG.

Dkt. 1-1 at 3. The Exclusive Agreement further states that PPG "shall diligently develop and maintain distribution of TIGI products to mass retail outlets throughout North America." *Id.* at 2.

Although the Exclusive Agreement was signed in or around October 11, 2011, it purports to be "effective as of January 1, 2008" and directs that it "shall remain continuously in effect for a period of five (5) years." Dkt. 1-1 at 2. Pursuant to the Exclusive Agreement, "PPG [was] granted an option to extend the term of the Agreement for two (2) additional five (5) year periods provided that PPG [had] contravened no material terms and conditions as the initial five (5) year term." *Id.*

---

[1] The Exclusive Agreement and its first extension were both signed on behalf of TIGI by Vincent Davis ("Davis"), a former TIGI employee who allegedly separated from the company on unfavorable terms in 2014. *See* Dkt. 1-1; Dkt. 67. TIGI alleges Davis did not disclose the Exclusive Agreement to TIGI management while he was employed by TIGI. *See* Dkt. 67. According to TIGI, it had no knowledge of the Exclusive Agreement until August 2017. *See* Dkt. 21-2 at 2.

On October 15, 2012, approximately one year after executing the Exclusive Agreement, PPG elected to extend the Exclusive Agreement for a five-year term to January 1, 2018. *See* Dkt. 11-2 at 2; Dkt. 21-2 at 2. On October 25, 2017, approximately five (5) years after executing the first extension, PPG elected to extend the Exclusive Agreement by another five-year term to December 31, 2022. *See* Dkt. 11-3 at 2.

TIGI filed suit against PPG in this Court on November 15, 2019. *See* Dkt. 1. That same day, TIGI remitted a letter to PPG, wherein TIGI terminated the Exclusive Agreement (the "Termination Letter") and attached a copy of the Complaint to the Termination Letter. *See* Dkt. 11-5. Despite TIGI's termination of the Exclusive Agreement, TIGI has continued to supply PPG with TIGI products for distribution. *See* Dkt. 67.

The present dispute concerns PPG's request for the production of TIGI business documents in an unredacted form, some of which TIGI either withheld entirely or produced in redacted form, citing the attorney-client and work-product privileges to justify such withholdings and redactions. *See* Dkt. 129 at 1. PPG filed the present Motion, wherein PPG seeks the full and unredacted production of six hundred twenty-five documents. *See id.* The parties have since slightly narrowed the number of disputed documents, with more than six hundred documents remaining at issue. *See* Dkt. 136 at 1.

At the Hearing, the Court ordered TIGI to submit a focused sample of twenty-two documents for *in camera* review, eleven of which were identified by PPG in their briefing and eleven of which were cited by TIGI in their briefing. *See* Dkt. 137. The parties agreed, and the Court concurred, this sampling would provide the Court adequate information to rule on the Motion without having to conduct an exhaustive examination of over six hundred documents. *See* Dkt. 137. TIGI produced the twenty-two documents to the Court by email that same day, December

9, 2020.

In addition to reviewing the twenty-two documents submitted, the Court also reviewed TIGI's First and Second Privilege Log (the "Privilege Log") (Dkt. 129-2) and the Declaration of David Schwartz, TIGI's general counsel (the "Declaration") (Dkt. 133-1). After thorough *in camera* review of the twenty-two documents, along with the Privilege Log and the Declaration, the Court enters this Memorandum Opinion and Order, wherein the Court issues specific rulings with respect to the twenty-two documents and intends such rulings to apply to the entire universe of approximately six hundred disputed documents.

## II.     LEGAL STANDARD

### A.  ATTORNEY-CLIENT PRIVILEGE

The attorney-client privilege protects communications between an attorney and a client made for the purpose of furnishing or obtaining professional legal advice or assistance. *In re LTV Securities Litigation*, 89 F.R.D. 595, 599–600 (N.D. Tex. 1981). The privilege exists to protect both the giving of professional advice to those who can act on it and also the giving of information to the lawyer to enable him to give sound advice. *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). The privilege serves to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* at 389.  The privilege "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Id.* (citing *Trammel v. United States*, 445 U.S. 40, 51 (1980)). When legal advice is sought from a professional legal adviser in her capacity as a legal adviser, the communications relevant to that purpose, made in confidence by the client, are, at the instance of the client, permanently protected. *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596,

602 (8th Cir. 1977).

The "assertion of privileges inhibits the search for truth." *Perkins v. Gregg County, Tex.*, 891 F. Supp. 361, 363 (E.D. Tex. 1995). Therefore, the attorney-client privilege is construed "no more broadly than is necessary to effectuate its purpose." *In re LTV Sec. Litig.,* 89 F.R.D. at 600. The attorney-client privilege extends to all situations in which counsel is sought on a legal matter, but it protects "only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976).

The parties agree Texas law applies for purposes of resolving privilege issues in this diversity case. FED. R. EVID. 501 ("The availability of a privilege in a diversity case is governed by the law of the forum state."); s*ee also* Dkt. 129 at 3 (noting that "Florida law is substantially the same and not addressed" in the briefing); Dkt. 133 at 2. Under Texas law, the attorney-client privilege will apply where: (1) a confidential communication; (2) is made for the purpose of facilitating the rendition of professional legal services; (3) between or amongst the client, lawyer, and their representatives; and (4) the privilege has not been waived. TEX. R. EVID. 503(b); *Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996). The party invoking the privilege bears the burden of demonstrating how each document or communication satisfies the required elements. *See Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 & n.7 (5th Cir.1985) (collecting cases).

### B.  WORK-PRODUCT PRIVILEGE

Work product is not a substantive privilege within the meaning of Federal Rule of Evidence 501. *See Interphase Corp. v. Rockwell Int'l Corp.*, No. 3-96-cv-290-L, 1998 WL 664969, at *4 (N.D. Tex. Sept. 22, 1998). Therefore, federal law governs the applicability and contours of this privilege, not state law. *See id.*

The work-product doctrine, codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, states:

> A. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship obtain their substantial equivalent by other means.

FED. R. CIV. P. 26(b)(3)(A); *see also Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991); *Nance v. Thompson Med. Co.*, 173 F.R.D. 178, 181 (E.D. Tex. 1997). Essentially, the work-product doctrine protects documents and other tangible things prepared by a party or representative of a party in anticipation of litigation. *See Hickman v. Taylor*, 329 U.S. 495 (1947); *Thomas v. General Motors Corp.*, 174 F.R.D. 386, 388 (E.D. Tex. 1997). "The party who is seeking the protection of the work-product doctrine has the burden of proving that the documents were prepared in anticipation of litigation." *Swoboda v. Manders*, No. 14-19-EWD, 2016 WL 2930962, at *5 (M.D. La. May 19, 2016) (quoting *Colony Ins. Co. v. NJC Enters., LLC*, No. 09-763, 2013 WL 1335737, at *2 (M.D. La. Apr. 1, 2013)).

## C. ASSERTION OF PRIVILEGE REQUIREMENTS

The party asserting the privilege bears the burden of demonstrating its applicability. *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). Federal Rule of Civil Procedure 26(b)(5) provides that a party claiming a privilege must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protect, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5). Compliance with this charge is "usually accomplished

by submission of a log identifying documents or other communications by date and by the names of the author(s) and recipient(s), and describing their general subject matter. . . ." *Santa Fe*, 272 F.3d at 710 (internal citation omitted).

### III.   <u>ANALYSIS</u>

According to PPG, the documents at issue fall under three categories, with some documents falling into multiple categories:[2] (a) documents without counsel regarding TIGI's business and PPG distribution ("Category A," documents identified by first bates number: TIGI00017131, TIGI00102762, TIGI00108411, TIGI00101719, TIGI00102765, TIGI00110439, TIGI00148242, TIGI00143723, TIGI00026369, TIGI00142086, TIGI00147928, and TIGI00032645); (b) documents regarding predominately business rather than legal advice ("Category B," documents identified by first bates number: TIGI00027470, TIGI00032676, TIGI00033827, TIGI00047168, TIGI00041182, TIGI00144226, TIGI00026369, and TIGI00098663); and (c) documents prepared in the regular course of business ("Category C," documents identified by first bates number: TIGI00101719, TIGI00102765, TIGI00110439, TIGI00144930, TIGI00155434, and TIGI00179204). *See* Dkt. 141 at 3, 6–8.

After reviewing the twenty-two documents *in camera*, the Court finds the issues are better addressed under the following four categories: (1) content which references an intent to seek legal advice; (2) content that discusses advice of counsel; (3) communications where counsel is carbon-copied; and (4) work product created for litigation. Below, the Court addresses the applicable law for each category and how it applies to the limited sample of documents produced and reviewed *in camera*.

---

[2] The Motion initially concerned four disputed categories (*see* Dkt. 129 at 3–10); however, the parties resolved one category of documents prior to the Hearing. *See* Dkt. 137.

### A. APPLICABLE LAW

#### 1. <u>Intent to Seek Legal Advice</u>

PPG argues that "[c]ommunications between TIGI or Unilever employees who merely discussed an intention to receive legal advice are not within the purview of the attorney client privilege." Dkt. 141 at 1. TIGI's general counsel, David Schwartz, contends in the Declaration that "some document redactions reflect a TIGI representative's intention to request legal advice from me or from the in-house legal team generally," and that such documents are privileged. Dkt. 133-1 at 5.

To the Court's best knowledge, the Fifth Circuit has yet to set clear guidelines for determining when the attorney-client privilege applies to communications between nonlegal employees who intend to seek legal advice. *See Teague v. Omni Hotels Mgmt. Corp.*, No. A-19-CV-00940-JRN, 2020 WL 7012004, at *2 (W.D. Tex. Aug. 26, 2020). In its supplemental memorandum, PPG cites *Teague* to argue the privilege does not attach to such communications because no lawyers are involved, quoting: "To think that an individual's communication could be privileged merely because that individual says, 'But I might talk to a lawyer about that,' is outlandish and nothing in Fifth Circuit precedent indicates to the Court that such documents should be considered privileged." 2020 WL 7012004, at *3; Dkt. 141 at 1.

Upon review of *Teague*, the Court acknowledges that it supports PPG's argument. However, the Court respectfully finds that *Teague* renders an analysis of the attorney-client privilege too mechanical and limiting. After reviewing other cases speaking to this issue, the Court elects to adopt the "dominant intent" standard articulated in other opinions.

The *Teague* court centered its analysis on the identity of the communicators, and ultimately found that the attorney-client privilege requires an attorney to either be present during a

communication or have previously rendered legal advice. *See* 2020 WL 7012004, at *3 & n.1. In support of its finding, the court cited a broad, general statement from the Fifth Circuit's decision in *United States v. El Paso Co.*: "Because the purpose of the attorney-client privilege is to promote the flow of information to the attorney to enable him to give informed legal advice, communications from lower echelon employees were within the privilege as long as the communications were made to the attorney to assist him in giving legal advice to the client corporation." 682 F.2d 530, 538 n.8 (5th Cir. 1982).

It is important to note that the Fifth Circuit's statement cannot be read as the definitive, exclusive condition for triggering the privilege's protections. That is, in *United States v. El Paso Co.*, the Fifth Circuit did not hold the attorney-client privilege can *only* be invoked if an attorney is involved in the communication contemporaneously or has been involved previously. Rather, the Fifth Circuit held that, given the factual circumstances of the employees in *United States v. El Paso Co.*, the only way the privilege could have applied to the employees' communications was if communications were made to an attorney to assist his giving of legal advice. *See id.* at 538 n.8. This fact-specific holding does not necessitate the rule that all communications between non-legal personnel without prior involvement of counsel will categorically fall outside of the attorney-client privilege's protection.

*Havel v. Dentsu McGarry Bowen UK, Ltd.*, provides a variant assessment of the law. No. H-13-1291, 2015 WL 409837, at *2 (S.D. Tex. Jan. 29, 2015). There, the Southern District of Texas also considered the attorney-client privilege's applicability to nonlegal employees who intended to seek legal advice. In its analysis, the *Havel* court looked to decisions from the Ninth Circuit and concluded: "The attorney-client privilege may attach to communications between nonlegal employees where: (1) 'the employees discuss or transmit legal advice given by counsel;'

and (2) 'an employee discusses her intent to seek legal advice about a particular issue.'" *Id.* (quoting *Datel Holdings Ltd. v. Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *5 (N.D. Cal. Mar. 11, 2011)). *Havel* noted the key question in cases where employees discuss their intent to seek legal advice is whether the "dominant intent" of the communication is to "prepare the information in order to get legal advice from the lawyer." *Id.* (quoting *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 2:07-cv-1190, 2010 WL 5014483, at *2 (S.D. Ohio Dec. 2, 2010)); *see also In re New York Renu with Moisturoloc Prod. Liab. Litig.*, No. MDL 1785, CA 2:06-mn-77777-DCN, 2008 WL 2338552, at *10 (D.S.C. May 8, 2008) (acknowledging the "dominant intent" standard and finding the attorney-client privilege applied to an email where the nonlegal personnel involved in the communication "intended to seek legal advice of any kind over the subject matter contained in the memoranda"); *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1269 (D. Kan. 2008) (finding the attorney-client privilege applied between corporate management employees where the party asserting the privilege established "the communication was made in confidence for the primary purpose of obtaining legal advice," though it was "not authored by an attorney, nor received by one").

In *United States v. ChevronTexaco Corp.*, a court in the Northern District of California explained the rationale for extending the attorney-client privilege communications to nonlegal employees who express their intent to seek legal advice in certain circumstances:

> Materials, transmitted between nonlawyers, that reflect matters about which the client intends to seek legal advice are comparable to notes a client would make to prepare for a meeting with her lawyer—notes which could serve as an agenda or set of reminders about things to ask or tell counsel. It would undermine the purpose of the attorney-client privilege not to extend protection to such notes. Therefore, internal communications that reflect matters about which the client intends to seek legal advice are protected.

241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002).

10

The reasoning in *Comtide* is also instructive. *See Comtide*, 2010 WL 5014483, at *2. In *Comtide*, a district court thoughtfully examined *ChevronTexaco* and *In re New York Renu*, and subsequently applied the "dominant intent" standard. *See id.* The *Comtide* court highlighted that it "should not be forgotten . . . that the attorney-client privilege, like all privileges, is to be construed narrowly." *Id.* In that vein, the *Comtide* court considered an email and an attachment sent from one nonlegal employee to another. *See id.* The court found there was "no admissible evidence before the Court that the 'dominant purpose' of [the sender's] transmission of the attachment to [his fellow non-legal coworker] was to enable [the company] to seek legal advice." *Id.* at *3. The court considered the attachment itself and additional privileged communications for references to the transmission. *See id.* The court noted that additional communications did not reference the transmission, did not incorporate it, and did not pass it along to counsel. *See id.* The court further concluded that it "could just as easily have been sent for a non-legal purpose," and was not privileged. *Id.* The court further expanded upon the necessity for this conclusion, and also the boundaries of attorney-client privilege in such a context:

> In reaching this decision, the Court is concerned about the larger principle of when the attorney-client privilege may legitimately be extended to communications which, on their face, do not appear to be covered by the privilege because neither the sender nor the recipient is an attorney. Although there clearly are situations where that extension is proper, it is also appropriate to require substantial proof that the exception applies in order to keep the privilege, and any extensions, from being construed too broadly and to swallow up a large number of non-privileged, and perhaps highly relevant, communications and to prevent their disclosure during the discovery process. In this case, to adopt any other construction of the evidence would be to enlarge the attorney-client privilege beyond its legitimate boundaries by concluding that any time there is some temporal relationship between non-lawyer communications and a request for legal advice from an attorney concerning the same subject, the former must necessarily have been intended, or primarily intended, to facilitate the latter. This type of presumption would not only be inconsistent with the admonition to construe the privilege narrowly, but would also ignore the reality that when a person or business is threatened with litigation, that threat may spawn a flurry of both business and legal communications, and the

11

burden must rest with the proponent of the privilege to come forward with sufficient evidence to allow the Court to distinguish between the two.

*Id.*

Thus, in light of *Havel*, *ChevronTexaco*, and *Comtide*, as well as the other cases cited above, the Court finds the broader, "dominant intent" standard more accurately reflects the attorney-client privilege's goals, rather than the narrow conception set forth in *Teague*. The attorney-client privilege aims to protect both the giving of professional advice to those who can act on it and the giving of information to the lawyer to enable her to give sound advice. *See Upjohn*, 449 U.S. at 390. Accordingly, the Court applies the "dominant intent" standard to the challenged documents within this category.

### 2.   <u>Discussion of Legal Advice</u>

As previously noted, the attorney-client privilege may attach to nonlegal employees where "the employees discuss or transmit legal advice given by counsel." *Havel*, 2015 WL 409837, at *2 (quoting *Datel*, 2011 WL 866993, at *5); *see also Teague*, 2020 WL 7012004, at *3 (same); *McCook Metals LLC v. Alcoa, Inc.*, 192 F.R.D. 242, 254 (N.D. Ill. 2000) ("Management should be able to discuss amongst themselves the legal advice given to them as agents of the corporation with an expectation of privilege.").

In support of its response, TIGI submitted the Declaration (Dkt. 133-1), which discusses several of the documents the Court reviewed *in camera*. The documents reflect nonlegal employees relaying the legal advice previously provided by TIGI's general counsel, David Schwartz. *See* Dkt. 133-1 at 3–5. As the Court finds below, the attorney-client privilege extends to documents in this category.

### 3. __Carbon-Copying Counsel__

TIGI's counsel is carbon-copied ("cc'ed") in several of the communications reviewed *in camera*. Merely cc'ing an attorney is "clearly insufficient to establish the [attorney-client privilege." *In re Avantel, S.A.*, 343 F.3d 311, 321 (5th Cir. 2003). "[E]-mails in which in-house or outside attorneys are merely sent copies of the text of the e-mail, or in which they are merely one of many addresses, should not be privileged, unless the email is directed to the attorney or sent by the attorney. . . . To rule otherwise would allow parties to evade the privilege limitations by sending copies of every company-generated e-mail to the company's attorney so as to protect the communication from discovery, regardless of whether legal services were sought or who the other recipients of the e-mail were." *Id.* at 321 n.11 (quoting and affirming the district court's reasoning). "Documents that [are] 'carbon copied' to counsel for informational purposes rather than for legal advice are not privileged." *Zloop, Inc. v. Phelps Dunbar LLP*, No. 6:18-cv-031, 2019 WL 1320542, at *3 (W.D. La. Mar. 22, 2019) (collecting cases).

Thus, as discussed below, merely cc'ing an attorney will not render a communication protected by the attorney-client privilege.

### 4. __Work-Product Privilege__

Under the work-product doctrine, documents prepared "in anticipation of litigation" are not discoverable. *See Dunn*, 927 F.2d at 875. The work-product documents do not have to be generated in the course of an ongoing lawsuit in order to qualify for protection. *See In re Leslie Fay Cos.*, 161 F.R.D. 274, 280 (S.D.N.Y. 1995). However, the documents "must have been prepared because of the prospect of impending litigation and not for some other purpose." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D. Tex. 2004). As set forth in the Advisory Committee Notes to Rule 26(b)(3), "Materials assembled in the ordinary course of

business, or pursuant to public requirements unrelated to litigation" are excluded from the work product privilege. *El Paso Co.*, 682 F.2d at 542; *Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 918 F. Supp. 491, 512–13 (D.N.H. 1996). "This is true 'even if the party is aware that the document may also be useful in the event of litigation.'" *Pacamor Bearings*, 918 F. Supp. at 513 (internal quotations omitted).

"[D]etermining whether a document is prepared in anticipation of litigation can be a slippery task." *El Paso Co.*, 682 F.2d at 542. The general rule is that "litigation need not be imminent . . . as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Id.* (quoting *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981)).

> Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance. . . .

*Elec. Data Sys. Corp. v. Steingruber*, No. 4:02-cv-225, 2003 WL 21653414, at *5 (E.D. Tex. July 9, 2003) (citing *Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. 99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000)). "If the document would have been created regardless of whether litigation was expected to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation." *Id.*

Moreover, "[i]t is not dispositive that some documents were not prepared by attorneys. Rule 26(b)(3) protects from discovery documents prepared by a party's agent, as long as they are prepared in anticipation of litigation." *Swoboda*, 2016 WL 2930962, at *6 (quoting *Naquin v. UNOCAL Corp.*, No. 01-3124, 2002 WL 1837838, at *7 (E.D. La. Aug. 12, 2002)).

14

The protection offered by the work-product doctrine is not absolute. *See Conoco Inc. v. Boh Bros. Constr. Co.*, 191 F.R.D. 107, 118 (W.D. La. 1998). Documents determined to be work product may still be subject to disclosure in discovery under certain circumstances. *See id.* The party seeking production of the document otherwise protected by the work product doctrine bears the burden of establishing that the materials should be disclosed. *See Hodges, Grant, & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985); *Varel v. Banc One Capital Partners, Inc.*, No. CA3:93-cv-1614-R, 1997 WL 86457, *2 (N.D. Tex. Feb. 25, 1997). The burden on the party seeking production varies with respect to the nature of the work product sought. *See Conoco*, 191 F.R.D. at 118.

Here, the Court finds certain documents reviewed *in camera* appear on their face, or as understood through the explanations provided in the Privilege Log and the Declaration, to be protected by the work-product privilege.

**B.  THE REVIEWED DOCUMENTS**[3]

### *Documents Identified by TIGI*

**1.  <u>TIGI00148242</u>**

The communication appears to constitute the internal discussion and transmission of legal advice given by counsel concerning various topics and is, therefore, privileged. The Declaration supports this finding. *See* Dkt. 133-1 at 3 ("TIGI00148242 . . . is an email from Frank Heuser to various other TIGI representatives in which Mr. Heuser relays legal advice that I provided to him.").

---

[3] The Court refers to each document by its applicable Bates number, as labeled when they were produced to the Court.

### 2.  **TIGI00143723**

The document appears to constitute the internal discussion and transmission of legal advice given by counsel within a chart of deadline items and is, therefore, privileged. The Declaration supports this finding. *See* Dkt. 133-1 at 4 ("The redacted cell recounts legal advice that I provided to Mr. Wilkins regarding compliance with United States antitrust laws and product pricing. Although I was not the author of this document, the author summarizes my confidential legal advice.").

### 3.  **TIGI00041182**

The communication appears to constitute communications between an attorney and a client regarding a PPG order made for the purpose of furnishing or obtaining professional legal advice or assistance and is, therefore, privileged. The Declaration supports this finding. *See* Dkt. 133-1 at 4 ("In this email chain, I provide confidential legal advice regarding the legal impact of TIGI's post-filing business dealings with PPG, which are privileged communications.").

### 4.  **TIGI00144226**

The communication appears to constitute communications between an attorney and a client regarding contract issues made for the purpose of furnishing or obtaining professional legal advice or assistance and is, therefore, privileged. The Declaration supports this finding. *See* Dkt. 133-1 at 4 ("TIGI00144226 . . . contains a confidential request for legal advice from TIGI representative Phil Cheadle to me (with another Unilever in-house counsel, Catherine Stromdale, cc'd) regarding whether certain actions would constitute a legal breach of the purported Exclusive Supply and Distribution Agreement (the "Agreement") between TIGI and PPG. I respond to this by providing confidential legal advice on that question.").

### 5. __TIGI00026369__

The document, which appears to constitute communications about a PPG contract, contains four redacted blocks.[4] The first two blocks are privileged. The first block appears to constitute communications between an attorney and a client made for the purpose of furnishing or obtaining professional legal advice or assistance. The second block is privileged as a communication reflecting intent to seek legal advice where the apparent dominant intent is to prepare information in order to obtain legal advice from TIGI's general counsel, David Schwartz.

The third and fourth blocks, however, are not privileged under any standard discussed herein. The Declaration states that, in the communication, TIGI representatives "discuss a legal question and agree that legal counsel needed to be sought. [One representative] then forwards the chain to [David Schwartz] to request legal advice regarding the scope of the Agreement." Dkt. 133-1 at 5. The actual redactions, however, do not appear to reveal more than the fact that the TIGI representative noted that he would seek legal advice and the second following up to see if the first had sought legal advice yet—the same information contained in the Declaration. Moreover, the explanation provided in the Privilege Log is too broad to cover the entire communication. *See* Dkt. 129-2 at 25 ("Email chain seeking legal advice from Schwartz, David* regarding the scope of the Agreement."). TIGI is, therefore, directed to remove the final two redaction blocks and produce the revised document to PPG.

### 6. __TIGI00098663__

The document, which appears to constitute communications with TIGI representatives and legal counsel regarding a PPG contract, contains six redacted blocks. The first four blocks are privileged as appearing to constitute communications between an attorney and a client made for

---

[4] "Blocks" are discussed from front to back of the entire document encompassing a series of communications rather than in the order that the series of communications comprising the document were originally made.

the purpose of furnishing or obtaining professional legal advice or assistance. The fifth and sixth redactions are, however, the same redactions the Court found to lack privilege in TIGI00026369 and are not privileged under any standard discussed herein.

### 7.   TIGI00142086

The communication, which appears to constitute plans for an upcoming phone call, is not privileged. Though the communication references an intent to involve the TIGI legal team, the dominant intent of the communication is not an intent to seek legal advice. The communication appears to involve discussion of business plans rather than gathering of information or notes for meeting with legal counsel. The simple mention of intent to involve the legal team is beyond the protection, as articulated in *Havel*.

Additionally, TIGI did not justify its assertion of privilege. The Declaration and the Privilege Log overstate the extent to which the redaction indicates intent to seek legal advice. *See* Dkt. 133-1 at 5 ("Thus, some document redactions reflect a TIGI representative's intention to request legal advice from me or from the in-house legal team generally."). *See* Dkt. 129-2 at 90 ("Email reflecting request for legal advice from in-house legal department regarding compliance with antitrust laws."). As the Declaration and Privilege Log do not demonstrate the applicability of the privilege, TIGI failed to meet its burden. *See Santa Fe*, 272 F.3d at 710; FED. R. CIV. P. 26(b)(5). Therefore, the document is not protected by the asserted privilege.

### 8.   TIGI00147928

The document appears to constitute a planning chart for Q4 2016, wherein the redacted statement conveys a specific issue upon which legal advice was sought. As such, it appears the dominant intent of the communication is an intent to seek legal advice on a specific issue and is, therefore, privileged. The Declaration supports this finding. *See* Dkt. 133-1 at 4 ("TIGI00147928

. . . contains a bullet point reflecting Frank Heuser's intent to seek my advice regarding legal risks of a change of TIGI's route-to-market. Due to PPG's performance issues, several times from late 2016 to 2019, TIGI considered alternatives to using PPG as a distributor. Mr. Heuser and other TIGI employees would consult with either myself or members of Unilever's legal staff to obtain legal advice regarding any legal implications of such a change of distributors.").

### 9. <u>TIGI00032645</u>

The communication appears to constitute the internal discussion and transmission of legal advice regarding the PPG contract and is, therefore, privileged. The Declaration supports this finding. *See* Dkt. 133-1 at 5 ("TIGI00032645 . . . is an email from Bijal Sheth containing legal advice from me (and other members of Unilever's in-house legal team and outside counsel) regarding potential damages and legal fee estimates should TIGI pursue litigation with PPG.").

### 10. <u>TIGI00155434</u>

The document appears to constitute a power point presentation wherein the primary motivating purpose behind its creation was to aid in possible future litigation and is, therefore, privileged. The Privilege Log and Declaration provide sufficient support for the conclusion that the work product privilege applies. *See* Dkt. 129-2 at 65 ("Presentation prepared at the direction of counsel in anticipation of this litigation regarding termination of the Agreement with PPG."); Dkt. 133-1 at 6 (stating that the redaction shields "discussions of either the potential risks or costs of settlement (or failure to settle this litigation), which were used as an analysis in determining legal strategy for this lawsuit").

**11. TIGI00179204**

The document appears to constitute a power point presentation containing the same material as TIGI00155434, and is likewise protected by the work product privilege. *See* Dkt. 133-1 at 6 (identifying TIGI00179204 as protected for the same reason as TIGI00155434).

*Documents Identified by PPG*

**1. TIGI00017131**

The communication appears to constitute a discussion between TIGI and Unilever representatives, and is not privileged. Though the communication references whether the TIGI representative should avoid approaching David Schwartz, the dominant intent of the communication is not an intent to seek legal advice. The communication does not even reflect a definite intent to seek legal advice—only whether to avoid consulting Mr. Schwartz—and, thus, is outside the protection, as articulated in *Havel*.

Additionally, TIGI did not justify its assertion of privilege. The Declaration and the Privilege Log are not accurate assessments of the communication. *See* Dkt. 133-1 at 5 ("These discussions about what legal advice TIGI representatives will seek from myself or from other members of the in-house legal team help facilitate the request and rendition of confidential legal advice."); Dkt. 129-2 at 39 ("Email reflecting request for legal advice from Schwartz, David* regarding the scope of the Agreement."). As the Declaration and Privilege Log do not demonstrate the applicability of the privilege, TIGI failed to meet its burden. *See Santa Fe*, 272 F.3d at 710; FED. R. CIV. P. 26(b)(5). Therefore, the document is not protected by the asserted privilege.

**2. TIGI00027470**

The communication appears primarily to constitute a conversation between TIGI and Unilever representatives concerning discussions between PPG and TIGI. Though the

communication cc'ed general counsel David Schwartz, there is no indication the communication exists to give information to Mr. Schwartz to enable him to provide legal advice. At most, the communication could be seen as keeping Mr. Schwartz "in the loop" of ongoing business discussions.

Additionally, TIGI did not justify its assertion of privilege. The communication is not explained or even referenced in the Declaration. *See* Dkt. 133-1. The explanation provided in the Privilege Log does not explain how simply cc'ing Mr. Schwartz in the communication constitutes providing information to aid in the seeking of legal advice. *See* Dkt. 129-2 at 26 ("Email providing information to assist in rendering legal advice from Schwartz, David* regarding negotiations of a business resolution with PPG."). Accordingly, all of the redacted portion of the communication with the exception of the last sentence is not privileged. As the last sentence of the redacted portion of the document is a direct communication with counsel, such sentence is privileged. TIGI is, therefore, directed to remove all of its redaction except the last sentence and produce the revised document to PPG.

### 3. __TIGI00032676__

The communication appears to constitute a conversation between TIGI and Unilever representatives recounting notes from a previous meeting and contains two redactions. The first redacted sentence is not privileged; it is simply a business agenda item. The document is not referenced in the Declaration, and the Privilege Log does not support the asserted privilege for the first redaction. *See* Dkt. 129-2 at 29 ("Email providing information to assist in rendering legal advice from Schwartz, David* and Ozer, Courtney* regarding negotiations of a business resolution with PPG.").

The second redacted sentence is privileged, constituting communications between an attorney and a client made for the purpose of furnishing or obtaining professional legal advice or assistance. Further, the Privilege Log is accurate for the purposes of the second redaction and supports the privilege assertion. TIGI is, therefore, directed to remove the redaction for the first redacted sentence and produce the revised document to PPG.

### 4. __TIGI00033827__

The communication concerns consultation with David Schwartz regarding a PPG order. The e-mails appear to constitute communications between an attorney and a client made for the purpose of furnishing or obtaining professional legal advice or assistance and is, therefore, privileged. Although the communication is not discussed in the Declaration, it is supported by the explanation provided in the Privilege Log. *See* Dkt. 129-2 at 33 ("Email chain providing legal advice from Schwartz, David* regarding termination of the Agreement with PPG.").

### 5. __TIGI00047168__

The communication appears to constitute a discussion between TIGI and Unilever representatives about "TIGI Project Revolution" and is not privileged. Though the communication cc'ed general counsel David Schwartz, there is no indication the communication exists to give information to Mr. Schwartz to enable him to give legal advice or communicates legal advice obtained from Mr. Schwartz.

Additionally, TIGI did not justify its assertion of privilege. The communication is not explained or even referenced in the Declaration. *See* Dkt. 133-1. The explanation provided in the Privilege Log asserts that it contains legal advice but does not explain how the Court or PPG can understand that the communication contains legal advice obtained from Mr. Schwartz. *See* Dkt. 129-2 at 100 ("Email discussing legal advice from Schwartz, David*; and in-house legal

22

department regarding change of route-to- market and litigation strategy."). As the Declaration and Privilege Log do not demonstrate the applicability of the privilege, TIGI failed to meet its burden. *See Santa Fe*; FED. R. CIV. P. 26(b)(5). The communication is, therefore, not privileged.

### 6. <u>TIGI00101719</u>

The document appears to be a presentation explaining "Project Revolution." The primary motivating purpose behind the creation of this document appears to be to aid in possible future litigation and is, therefore, privileged. Further, the redacted information constitutes the internal discussion and transmission of legal advice given by counsel and is, consequently, privileged.

The Privilege Log and Declaration provide sufficient support for the conclusion that the work product and attorney-client privileges apply. *See* Dkt. 129-2 at 138 ("Report discussing legal advice from in-house legal department; and outside counsel and prepared at the direction of counsel in anticipation of this litigation regarding a change in route-to-market."); Dkt. 133-1 at 6 (stating that the document contains "redactions that shield litigation strategy for this lawsuit" including "anticipated claims," "filing dates," and the legal team's estimates of "legal fees and potential damages, if any").

### 7. <u>TIGI00102762</u>

The communication appears to constitute discussion of "Project Revolution" between TIGI and Unilever representatives. The communication is not referenced or even explained in the Declaration. *See* Dkt. 133-1. After careful review of the document, along with TIGI's explanation of the privilege in the Privilege Log, the Court is not confident that it can make an accurate analysis for the purpose of determining whether the attorney-client privilege applies. As such, the Court will request further explanation in the form of briefing or discussion on a telephone conference, at the Court's discretion.

**8. <u>TIGI00102765</u>**

The document appears to be a presentation explaining "Project Revolution." The document contains the same information as TIGI00101719, and is, for the same reasons identified herein, privileged. *See* Dkt. 133-1 at 6 ("The same information was redacted in TIGI00101719. . . .").

**9. <u>TIGI00108411</u>**

The communication appears to recount the notes of a meeting about "Project Revolution." The communication is not privileged. The document merely indicates a draft of a "risk matrix & risk mitigation plans" which includes a particular scenario in which TIGI should be ready to seek legal advice. There is no dominant intent to prepare information in order to obtain legal advice; the intent is entirely hypothetical, and further, the document merely indicates the current plans—there is no evidence that this document accurately reflects the plans that were actually undertaken.

The Declaration does not discuss the communication and the Privilege Log is an inaccurate representation of the redacted material. *See* Dkt. 133-1; Dkt. 129-2 at 130 ("Email reflecting request for legal advice from Schwartz, David* regarding potential negotiations with PPG."). Therefore, TIGI has not supplied sufficient support for the conclusion that the attorney-client privilege applies, and thus, has failed to meet its burden.

**10. <u>TIGI00110439</u>**

The document appears to constitute a power point presentation wherein the primary motivating purpose behind the creation of this document appears to be to aid in possible future litigation and is, therefore, privileged. Further, the redacted information constitutes the internal discussion and transmission of legal advice given by counsel and is, consequently, privileged.

The Privilege Log provides sufficient support for the conclusion that the work product and attorney-client privileges apply. *See* Dkt. 129-2 at 123 ("Presentation discussing legal advice from

in-house legal department; and outside counsel and prepared at the direction of counsel in anticipation of this litigation regarding a change in route-to-market.").

### 11. <u>TIGI00144930</u>

The communication appears to constitute the internal discussion and transmission of legal advice concerning pricing given by counsel and is, therefore, privileged. The Privilege Log identifies the communication as protected work product. *See* Dkt. 129-2 at 90 ("Email prepared at the direction of counsel in anticipation of this litigation regarding purported diversion in the United States retail market."). However, the Declaration provides a more accurate explanation of the communication such that the Court finds it is shielded by the attorney-client privilege. *See* Dkt. 133-1 at 4 (stating that in the communication "Elisa Fischer summarizes her understanding of legal privilege and a court's ability to compel discovery of documents," and that it "is a reasonable inference to conclude that Ms. Fischer, who is not a member of the legal profession, would have received such advice from counsel.").

### IV.   <u>CONCLUSION</u>

For the reasons stated herein, PPG's Motion to Compel Improperly Redacted Business Documents (Dkt. 128) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED** that, as the privilege applies, TIGI is not required to produce the following documents in unredacted form: TIGI00148242, TIGI00143723, TIGI00041182, TIGI00144226, TIGI00147928, TIGI 00032645, TIGI00155434, TIGI00179204, TIGI00033827, TIGI00101719, TIGI00102765, TIGI00110439, and TIGI00144930.

**IT IS FURTHER ORDERED** that, as the privilege does not apply, TIGI is **ORDERED** to produce the following documents in unredacted form to opposing counsel, on or before

**Tuesday, January 5, 2021, at 12:00 p.m.**: TIGI00142086, TIGI00017131, TIGI00047168, and TIGI00108411.

IT IS FURTHER ORDERED that, as the following documents contain some privileged communications and some non-privileged communications, TIGI is **ORDERED** to redact the documents as specifically directed herein and produce revised copies to opposing counsel on or before **Tuesday, January 5, 2021, at 12:00 p.m.**: TIGI00026369, TIGI00027470, TIGI00098663, and TIGI00032676.

IT IS FURTHER ORDERED that, as stated herein, the Court finds the provided information and argument insufficient on which to make a determination as to the following document: TIGI00102762. As such, the Court will follow-up with counsel to make a final determination.

IT IS FURTHER ORDERED that TIGI is directed to complete a review of the remaining disputed documents, produce documents in keeping with the Court's findings herein, and confer with PPG regarding any remaining issues by **Wednesday, January 13, 2021, at 12:00 p.m.** If the parties are unable, at that time, to resolve any remaining privilege issue, PPG is permitted to file a subsequent motion to compel.

So ORDERED and SIGNED this 30th day of December, 2020.

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE