IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TIGI LINEA CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | LEAD CASE 4:19-cv-840-RWS-KPJ |
| v. | § | CONSOLIDATED CASE 4:20-cv-87 |
| | § | |
| PROFESSIONAL PRODUCTS GROUP, | § | |
| LLC | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

On June 11, 2021, Professional Products Group, LLC ("PPG") filed a Motion for Leave of Court to Take Three Additional Depositions (the "Motion") (Dkt. 192), which TIGI Linea Corp. ("TIGI") opposes. The Court ordered expedited briefing, which the parties timely submitted. *See* Dkts. 193, 194, 195.

Having considered the arguments and applicable authorities, the Court finds PPG's Motion (Dkt. 192) is hereby **GRANTED**.

### I. BACKGROUND

#### A. THE ALLEGATIONS

TIGI, a subsidiary of Unilever, manufactures professional hair care, body, and cosmetic products. *See* Dkt. 89 at 2; Dkt. 143 at 2. PPG is a distribution company that distributes professional hair care products from manufacturers directly to retailers, as well as to other distributors and wholesalers. *See* Dkt. 13-1 at 1; Dkt. 143 at 2.

PPG alleges that, since 2008, PPG has continuously acted as an exclusive distributor and supplier of TIGI products. Dkt. 89 at 2–3. In 2011, the parties "memorialized" this agreement through an Exclusive Agreement, which purports to grant PPG "an exclusive right to sell TIGI

1

Products to distributors and wholesalers that sell to mass retailers and to sell TIGI Products directly to mass retail stores such as Wal-Mart, club stores, drug store chains, food stores, or wherever professional hair-care products can be found located in North America (the "North America Mass Retail Market")." *See id.*; Dkt. 89-1 at 3. The Exclusive Agreement also provides, "TIGI shall not sell, directly or indirectly, to the North American Mass Retail Market other than to PPG without the prior written approval of PPG." Dkt. 89-1 at 3. According to PPG, "In 2011, TIGI and PPG agreed that the Exclusive Agreement would have a retroactive effective date of January 1, 2008, to encompass the period that PPG had been operating as the exclusive supplier and distributor of TIGI Products in the U.S. Mass Retail Market." *See* Dkt. 89 at 2–3.

In August 2017, TIGI informed PPG of its decision to move to a direct distribution model. Dkt. 143 at 6. TIGI alleges "[a]t that time, and for the first time," PPG notified TIGI management of the Exclusive Agreement, and "PPG represented to TIGI that it had a valid and enforceable [exclusive distribution contract] dating back to January 1, 2008." *Id.*

On these facts, TIGI brought suit against PPG, alleging PPG is liable for fraud, fraud by nondisclosure, aiding and abetting a TIGI employee's breach of his fiduciary duties, and entering into a civil conspiracy against TIGI. *Id.* at 12–16. In the event TIGI is bound by the Exclusive Agreement, TIGI pleads, in the alternative, that PPG is liable for breach of contract, as PPG did not fulfill its obligation to "diligently" promote TIGI products as specified in the Exclusive Agreement. *See id.* at 16–18.

PPG asserts counterclaims against TIGI. *See* Dkt. 89. PPG alleges TIGI "chronically" breached the Exclusive Agreement's express terms, wrongfully terminated the Exclusive Agreement, breached the implied covenant of good faith and fair dealing, tortiously interfered with PPG's business relationships, and defrauded PPG. *See* Dkt. 89 at 4, 12–23. Specifically, PPG

alleges TIGI deliberately circumvented the Exclusive Agreement's terms by creating a "vast 'grey market,'" whereby TIGI sold its products directly to PPG's customers at a lower price than what PPG could offer. *Id.* at 6. PPG further alleges TIGI intentionally sold products to Latin American entities, knowing they would sell TIGI products to the North American Mass Retail Market at "rock-bottom prices." *See* Dkt. 192 at 12. PPG alleges TIGI's "flouting" of PPG's exclusivity rights has substantially and negatively impacted PPG's business relationships. Dkt. 89 at 6. In response, TIGI counters that it only directly sold "overstocks" and "slow-moving and obsolete" items ("SLOB's") to mass retailers—not bestselling products. *See* Dkt. 192 at 9. TIGI avers such direct sales were made with PPG's consent. *See id.*

On March 3, 2020, the Court entered its Order Governing Proceedings (Dkt. 35), and the parties commenced discovery. On June 11, 2021, PPG filed the present Motion, wherein PPG seeks leave to take three depositions. *See* Dkt. 192. Because of the parties' imminent discovery deadline of July 30, 2021, the Court ordered expedited briefing, which the parties timely submitted. *See* Dkts. 193, 194, 195.

### B. DEPOSITIONS ALREADY TAKEN OR SCHEDULED

In its Motion, PPG represents that TIGI has stipulated to the depositions of twelve individuals. The deponents, their employer, and their job title(s) are as follows:

| No. | Name | Employer | Title |
|---|---|---|---|
| 1. | Karen W. Smith* | TIGI/Unilever | Former Commercial Marketing Lead of Consumer Retail; Former Head of Marketing in the Americas |
| 2. | Rebecca (Doluisio) Landrey* | TIGI/Unilever | Head of Customer Service |
| 3. | Elisa Fischer* | TIGI/Unilever | Current General Manager of the Americas and Asia Pacific; Former General Manager of the Americas |
| 4. | Davis Schwartz* | TIGI/Unilever | Vice President and General Counsel of North America; Former Associate General Counsel |
| 5. | Tom Monaghan* | TIGI/Unilever | Former Global President |

3

| | | | |
|---|---|---|---|
| 6. | Saurabh Nayyar* | TIGI/Unilever | Former Finance Manager for the Americas; Former Global Finance Director; Former Finance Director |
| 7. | Phil Cheadle* | TIGI/Unilever | General Manager of Global Retail |
| 8. | Alan Wilkins | TIGI/Unilever | Global Finance and Operations Director; Former Operations Director; Former Global Finance Director; Former Finance Director |
| 9. | Mark Bleathman | TIGI/Unilever | Global General Manager |
| 10. | Patricia Benavides | TIGI/Unilever | Sales Director for Latin America |
| 11. | Lorri Hughes* | Advantage | Client Development Manager |
| 12. | TBD | Pharmapacks | Representative |

Dkt. 192 at 11–12.[1]

PPG further represents that TIGI previously stipulated to PPG deposing fourteen individuals; however, TIGI subsequently reneged on this stipulation. *Id.* at 1–2.

### C. DESIRED DEPOSITIONS

In addition to the twelve individuals listed above, PPG seeks leave to depose three other individuals: Scott Antony ("Antony"), former director of Unilever's team at Target until February 2020; Manjula Kekulthotuwa ("Kekulthotuwa"), former Global Head of Supply Chain at TIGI from 2013 to January 2021; and Simon Cooper ("Cooper"), Head of U.S. Consumer Retail at TIGI beginning in September 2020. *Id.* at 2. These three proposed deponents are not part of the fourteen to which the parties originally stipulated. *Id.*

PPG avers Antony's testimony is particularly relevant to PPG's counterclaims, as PPG believes Antony, who was responsible for directly managing TIGI's relationship with Target, facilitated direct sales to Target in violation of the Exclusive Agreement. *See id.* at 6. PPG cites an email it obtained from written discovery, in which a former TIGI employee states:

> I've re-read [Antony's] email: I'm very worried that he says Kees and Neva have already "committed" to Target re. **direct** supply. . . . **I'm afraid PPG will find out about our plans somehow through Target**.

---

[1] An asterisk (*) indicates PPG has already taken the witness's deposition. *Id.* at 11.

Dkt. 191-1 at 2 (emphasis added).

PPG advances similar arguments regarding Kekulthotuwa, whose name appears on over 650 emails produced by TIGI. *See* Dkt. 192 at 2. PPG believes Kekulthotuwa can provide relevant testimony regarding TIGI's laser coding operations, TIGI's direct sales of overstock and SLOB items, and TIGI's executive-level discussions on transitioning to a direct sales strategy in the North American Mass Retail Market. *Id.* at 7–9. For example, in its counterclaims, PPG alleges it repeatedly asked TIGI to facilitate an effective "laser coding" operation, whereby TIGI products would be marked such that TIGI could keep track of each individual unit and prevent the improper diversion of products from its supply chain. *See id.* PPG alleges TIGI did not meaningfully enforce its own anti-diversion policies, and in 2016, TIGI stopped laser coding products distributed in the North American Mass Retail Market—the region in which PPG purports to have exclusive distribution rights. *See id.* PPG argues Kekulthotuwa, as Global Head of Supply Chain, had direct supervisory responsibility of the laser coding operations and, thus, desires deposing him on this very issue. *See* Dkt. 192 at 8.

Likewise, PPG believes Kekulthotuwa's oversight of TIGI's supply chain has imbued him with probative knowledge regarding TIGI's selling of overstock items and SLOB's to mass retail outlets. *Id.* at 8–9. PPG further contends Kekulthotuwa is a member of TIGI's equivalent of a board of directors, which planned and implemented "Project Revolution." *Id.* at 9. According to PPG, Project Revolution refers to TIGI's plan to wrongfully terminate the Exclusive Agreement, initiate this lawsuit, and transition to a direct sales strategy. *See id.*

Finally, PPG contends Cooper has relevant testimony regarding TIGI's attempt to carry out a direct sales strategy. *See id.* In or around September 2020, Cooper became the Head of U.S. Consumer Retail at TIGI, whereby he assumed the responsibilities of three previous high-level

TIGI employees, all of whom have been key witnesses in this lawsuit. *See* Dkt. 192 at 2–3. PPG avers Cooper, in this new position, directly liaised with a representative of Advantage Sales and Marketing, LLC ("Advantage"), a distribution company, to steal mass retail customers, such as Wal-mart and Walgreens, away from PPG. *See* Dkt. 192-4.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 30(a)(2), if a party wishes to take more than ten depositions and its adversary does not stipulate to the additional depositions, the party must obtain leave from the court. *See* FED. R. CIV. P. 30(a)(2). When a party seeks leave to take more than ten depositions, the court's decision whether to grant such leave is governed by the principles of Rule 26(b)(1) and 26(b)(2). *See id.*

Under Rule 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." FED. R. CIV. P. 26(b)(1). Although Rule 26(b)(1)'s relevance and proportionality inquiries are related, they are distinct requirements. *Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017).

Rule 26(b)(2) empowers the court to alter the number of depositions taken. *See* FED. R. CIV. P. 26(b)(2)(A). However, in making such alterations, the court must limit discovery if (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the proposed discovery is outside of the scope permitted by 26(b)(1). *See* Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).

### III. ANALYSIS

#### A. RULE 26(b)(1)

##### 1. Relevance

Relevance encompasses any matter "that bears on, or that could reasonably lead to other matter that could bear on, any issue that is or may be in the case." *Cunningham v. Concentrix Sols. Corp.*, No. 4:20-cv-661, 2021 WL 2258747, at *1 (E.D. Tex. June 3, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value. If it were otherwise, it would make little sense for Rule 26(b)(1) to direct courts to consider whether discovery that is relevant to any party's claim or defense is also important in resolving the issues." *Samsung*, 321 F.R.D. at 280.

Antony, Kekulthotuwa, and Cooper's testimony is plainly relevant to PPG's counterclaims and TIGI's defenses. PPG avers these individuals have personal knowledge of TIGI's alleged efforts to transition to a direct-sales strategy during the effective time period of the Exclusive Agreement. Specifically, PPG alleges: (1) Antony has personal knowledge of TIGI's alleged coordination with Target to create a "vast grey market" of improper direct sales; (2) Kekulthotuwa has personal knowledge of the dismantling of TIGI's laser coding system, the validity of TIGI's defense regarding overstock items and SLOB's, and the high-level conversations surrounding Project Revolution; and (3) Cooper has personal knowledge of TIGI's alleged attempts to steal PPG's customers away from it. *See* Dkt. 192. The expected testimony from these deponents bear on PPG's counterclaim that TIGI breached the express terms of the Exclusive Agreement and TIGI's defense that any direct sales made by TIGI were done with PPG's consent.

## 2. Proportionality

Proportionality is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1); *see also* RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2008.1 (3d ed.) (April 2021 update).

Here, granting leave to conduct additional depositions is proportional to the needs of this case. The issues at stake are large—the Exclusive Agreement granted PPG exclusive distribution rights in the North American Mass Retail Market, which includes well-known big box stores such as Target, Wal-mart, Walgreens, Marshalls, TJ Maxx, and Costco. *See* Dkt. 89-1; Dkt. 156-1 at 10–11. Given the scale at which these entities operate, the amount in controversy is also necessarily large.

Further, because Antony has personal knowledge of TIGI's relationship with Target—a central player in PPG's counterclaims against TIGI—obtaining his testimony on this commercial relationship is important to resolve the issues between the parties. *See* Dkt. 89 at 11 (alleging TIGI directly contacted Target with a "notice of change of TIGI brand route-to-market within the United States" on January 9, 2020). So too with Kekulthotuwa. Kekulthotuwa can likely testify to the laser coding operations in not only North America—where PPG had exclusive distribution rights—but also in other continents. Kekulthotuwa's expected testimony is important to resolve the issue of whether TIGI deliberately dismantled its own laser coding system in North America, so as to obfuscate any direct sales made in breach of the Exclusive Agreement. Kekulthotuwa may also provide probative testimony regarding TIGI's defense regarding overstock items and SLOB's, as well as the details of Project Revolution. The same is true for Cooper. His testimony will likely

confirm or invalidate PPG's theory that TIGI and Advantage conspired to tortiously interfere with PPG's clientele.

Lastly, the additional cost of deposing these three witnesses is proportional to the needs of this case. The parties do not dispute that, at one point, TIGI and PPG stipulated to PPG's deposing of fourteen individuals. Therefore, the cost of deposing fourteen individuals had already been anticipated by the parties and deemed acceptable for the needs of this case. Regarding a fifteenth deposition, the Court finds this additional cost is warranted given this case's complexity and scale. This lawsuit is a commercial dispute involving voluminous documents, sophisticated deponents, supply chains spanning multiple continents, and elaborate business operations spanning over ten years. The benefit of a single, additional deposition beyond what the parties had initially contemplated outweighs the burden of the added expense. *See United States v. Marc*, No. 6:18-cv-2147, 2019 WL 2053834, at *2 (M.D. Fla. May 9, 2019) (granting leave to take additional depositions where lawsuit involved conduct involving multiple schemes, occurring over a long period of time, numerous customers, and numerous locations).

Accordingly, the additional depositions of Antony, Kekulthotuwa, and Cooper are discoverable within the meaning of Rule 26(b)(1).

### B. RULE 26(b)(2)

#### 1. Unreasonably Cumulative or Duplicative and Less Burdensome Means

The Court finds the expected deposition testimony of Antony, Kekulthotuwa, or Cooper would not be unreasonably cumulative, unreasonably duplicative, or available through less burdensome means.

### a. Applicable legal standard

As an initial matter, the parties disagree over the legal standard that should define PPG's burden. TIGI relies on *Barrow v. Green Independent School District.*, 202 F.R.D. 480 (N.D. Tex. 2001) (Fitzwater, J.), in arguing that PPG must show the necessity of all fifteen deponents' testimony, regardless of whether PPG has taken each deponent's deposition. *See* Dkt. 194 at 2–3. PPG argues TIGI misreads *Barrow*, interpreting *Barrow* as standing for a limited proposition: Where a party has already taken ten depositions and seeks leave to take additional depositions, the party must establish the necessity of the ten depositions already taken and make a particularized showing of why the additional depositions are necessary. *See* Dkt. 195 at 2–4. According to PPG, because PPG has only taken eight depositions—not ten—the burden that *Barrow* imposes does not apply.

The plain language of *Barrow* states: "[T]he court holds that a party who, without court permission, has *already* taken the maximum number of depositions permitted by Rule 30(a)(2)(A), and who seeks to establish that the decision not to allow additional ones is an abuse of discretion, must demonstrate the necessity for each deposition she took without leave of court pursuant to the presumptive limit of Rule 30(a)(2)(A)." 202 F.R.D. at 482 (emphasis added). Based on the plain language of *Barrow*, it would appear that PPG's reading of *Barrow* is correct. At least one other court has interpreted *Barrow* in this manner. *See American Elec. Power Co., Inc. v. Affiliated FM Ins. Co.*, 2005 WL 8155306, at *3 (M.D. La. June 21, 2005) (finding *Barrow* did not apply where movant had not taken ten depositions).

However, fifteen years after *Barrow* was decided, Judge Fitzwater, who authored *Barrow*, interpreted *Barrow* to stand for the very proposition TIGI offers. *See MacKenzie v. Castro*, No. 3:15-cv-752, 2016 WL 3906084, at *5 (N.D. Tex. July 19, 2016) (Fitzwater, J.). In *MacKenzie*,

before discovery commenced, the movant sought leave to depose twenty individuals. *See id.* Because the movant had not established the necessity of any proposed deponent, Judge Fitzwater denied the movant's prayer for leave and cited *Barrow*. *See id.* Other courts have similarly interpreted *Barrow*. *See, e.g.*, *Zenith Ins. Co. v. Texas Inst. for Surgery, LLP*, No. 3:18-cv-182, 2018 WL 5084913, at *2, *4–5 (N.D. Tex. Oct. 18, 2018) (Horan, J.) (finding movant who had only taken two depositions and sought leave for more than ten depositions did not meet his burden to show the two depositions taken and eight planned were necessary).

Further, some courts have found that when a party has yet to depose ten witnesses or complete a stipulated number of depositions, a motion for leave should be denied without prejudice, as the issue of deposing additional witnesses was prematurely raised. *See, e.g.*, *Cutugno v. Second Chance Jai Alai LLC*, No. 5:11-cv-113, Dkt. 52 (M.D. Fla. Oct. 5, 2012) (denying motion without prejudice, as movant had only taken four depositions); *DeGraw v. Gualtieri*, No. 8:18-cv-2116, 2019 WL 5423317, at *4 (M.D. Fla. Oct. 23, 2019) (denying motion without prejudice, as movant had not yet taken the fifteen depositions to which the parties stipulated). *But see Caudle v. District of Columbia*, No. 08-205, 2009 WL 10694443, at *1–2 (D.C. Dec. 28, 2009) (finding movant's request for additional depositions not premature due to imminent discovery deadline); *Ariel Syndicate 1910 v. Paramount Disaster Recovery, LLC*, No. 6:17-cv-1279, 2018 WL 1988866, at *3 (M.D. Fla. Jan. 4, 2018) (granting leave to take fifty depositions, even though movant had not deposed any witnesses, but denying leave to take 142 depositions).

To the Court's best knowledge, the Fifth Circuit has not spoken on these precise issues. That is, under what circumstances must a movant establish the necessity of every deponent's testimony, and whether a motion for leave is unripe if the movant has not deposed ten individuals, or the number of stipulated depositions.

Out of an abundance of caution, the Court assumes *Barrow*, as interpreted by *MacKenzie*, applies, and PPG must establish the necessity of all depositions it has already taken and will take. Further, the Court finds it is not premature to grant PPG leave at this juncture. Even though PPG has not deposed all twelve stipulated-to deponents, given the imminent discovery deadline, PPG acted properly in seeking leave and the issue is ripe for the Court's ruling. *See Caudle*, 2009 WL 10694443, at *1–2; *Ariel Syndicate 1910*, 2018 WL 1988866, at *3.

      b. *Necessity of the stipulated-to deponents' testimony*

The twelve deponents to which the parties stipulated are all necessary. Seven of the stipulated-to deponents—Karen W. Smith, Rebecca (Doluisio) Landry, Elisa Fischer, Davis Schwartz, Phil Cheadle, Alan Wilkins, and Mark Bleathman—submitted a sworn declaration or affidavit on behalf of TIGI. *See* Dkt. 195 at 3–4. It is necessary that PPG depose these individuals to verify or challenge their written testimony and to clarify any gaps.

With respect to the remaining five stipulated-to deponents—Tom Monaghan ("Monaghan"), Saurabh Nayyar ("Nayyar"), Patricia Benavides ("Benavides"), Lorri Hughes ("Hughes"), and the Pharmapacks representative—PPG has met its burden of establishing these deponents' testimony is necessary.

TIGI alleges that in August 2017, it notified PPG of its decision to transition to a direct distribution model. *See* Dkt. 143 at 6. TIGI alleges that at that time, for the first time, PPG procured the Exclusive Agreement. *See id.* Monaghan, TIGI's former Global President, was present during this alleged unexpected reveal. *See* Dkt. 192. To investigate whether TIGI actually lacked knowledge of the Exclusive Agreement's existence prior to August 2017, PPG must depose Monaghan. His testimony is necessary.

12

As part of its breach of contract and tortious interference counterclaims, PPG alleges TIGI "surreptitiously" sold TIGI products to Latin American diverters, knowing and expecting that these entities would sell the products in the North American Mass Retail Market "at rock-bottom prices." *See* Dkt. 192 at 12. Benavides, Sales Director for Latin America, was employed by TIGI during the entirety of the relevant time period. *See id.* To explore this theory, Benavides' deposition testimony is necessary.

Nayyar's testimony is also necessary. Nayyar is TIGI's former Finance Manager for the Americas, former Global Finance Director, and former Finance Director. Dkt. 192 at 12. His knowledge of TIGI's sales information at the regional level and the global level is necessary for PPG to determine the strength of its case. For example, if Nayyar's testimony regarding sales volume in the Americas does not match PPG's own records, this testimony will help PPG determine whether the discrepancy is due to a "vast grey market." If Nayyar's testimony comports with PPG's own sales figures, this, too, is necessary to determine the viability of PPG's counterclaims.

Finally, the depositions of non-parties Advantage and Pharmapacks are necessary. PPG alleges TIGI worked with Advantage prior to TIGI's termination of the Exclusive Agreement, and this collaboration focused on stealing PPG's customers. *See id.* at 12–13. PPG further alleges TIGI reached out to Pharmapacks, one of PPG's clients, about purchasing TIGI products directly from Pharmapacks, rather than from PPG. *See id.* Again, to determine the veracity of PPG's theories of tortious interference, deposing Hughes, Client Development Manager at Advantage, and a Pharmapacks representative is necessary.

### c. *Necessity of the desired deponents' testimony*

The twelve individuals PPG has already, or plans to, depose cannot offer the highly probative and specific testimony PPG desires from Antony, Kekulthotuwa, and Cooper. For example, PPG argues that, of the fifteen individuals PPG wishes to depose, only Antony has direct, personal knowledge of TIGI's day-to-day communications with Target and whether TIGI tortiously interfered with PPG's relationship with Target. *See* Dkt. 195 at 4–5. TIGI's alleged interference with Target lies at the heart of this case, and testimony regarding this relationship is necessary to PPG's ability to prove its counterclaims. *See* Dkt. 89 at 11.

Likewise, PPG argues that, of the proposed deponents, only Kekulthotuwa sits on TIGI's equivalent of a board of directors, and thus, only he can provide non-duplicative testimony about Project Revolution, disabling laser coding at a continent-wide level, and what other directors envisioned for the North American Mass Retail Market. *See id.* at 5. The Court agrees. PPG's lawsuit alleges TIGI orchestrated an elaborate scheme to breach the Exclusive Agreement and tortiously interfere with numerous entities throughout North America, and this orchestration was engineered at the highest levels of leadership. *See* Dkt. 89. Because Kekulthotuwa is the only proposed deponent who can speak to these issues, his deposition is necessary. *See* Dkts. 192, 195.

Finally, PPG argues that, of the fifteen proposed deponents, only Cooper can offer admissible testimony regarding TIGI's decision to collaborate with Advantage and how this collaboration may have resulted in tortious interference. *See id.* Testimony from Lorri Hughes, an Advantage employee, cannot be attributable to TIGI, and other deponents on the list only have indirect, rather than direct, knowledge of TIGI's relationship with Advantage. *See id.* PPG is correct. Hughes' testimony is necessary for PPG to examine whether TIGI's relationship with Advantage could prove TIGI's liability for tortious interference.

### d. Rule 26(b)(2)'s factors

Because Antony, Kekulthotuwa, and Cooper are the only proposed deponents who can provide the testimony on the specific topics sought, it follows that their testimony will not be unreasonably duplicative of other deponents' testimony. Because PPG seeks to depose Antony, Kekulthotuwa, and Cooper on highly specific topics—all of which are relevant and proportional to the needs of this case—the Court finds the testimony sought is not unreasonably cumulative of other testimony already acquired or anticipated. And lastly, even though PPG has obtained written discovery that touches on some of these issues, PPG can only obtain certain facts through Antony, Kekulthotuwa, and Cooper's live testimony. Accordingly, PPG cannot acquire these facts through less burdensome means. Given these considerations, this factor—whether the deposition testimony would be unreasonably duplicative or cumulative and is available through other channels—weighs in favor of granting PPG's prayer for leave.

### 2. Ample Opportunity to Obtain the Information by Discovery

This factor also weighs in favor of granting PPG's prayer for leave. PPG represents that approximately one month prior to the Motion's filing and two months before the discovery deadline, TIGI "initially agreed not to hold PPG to the presumption 10 deposition limit." Dkt. 192 at 15. At one point, both parties agreed that PPG could depose fourteen witnesses. *See id.* at 1–2. Therefore, PPG reasonably believed it could depose more than ten individuals without seeking leave from the Court. Only on the week of the Motion's filing did PPG learn TIGI opposed the deposition of Antony and Kekulthotuwa. *See id.* As for Cooper, PPG represents that, at the time of the Motion's filing, TIGI's counsel had not decided whether or not to agree to PPG's deposing of Cooper. *See id.* at 2 n.2. Out of caution, PPG requested leave to depose Cooper in its Motion.

Thus, PPG appears to argue the following: Initially, PPG believed it would have ample opportunity to depose Antony, Kekulthotuwa, and Cooper, but given TIGI's unexpected opposition and the imminent discovery deadline, PPG felt compelled to file the pending Motion. *See id.* TIGI's response brief does not address this argument.

Based on the record and the parties' briefing, the Court finds this factor weighs in favor of granting PPG's Motion.

### 3. Rule 26(b)(1)

As stated herein, the deposition testimony PPG seeks is relevant and proportional to the needs of this case. *See supra* Section III.A. Because deposing Antony, Kekulthotuwa, and Cooper would not lie outside the scope of Rule 26(b)(1), this factor also weighs in favor of granting PPG's motion for leave.

## IV. CONCLUSION

For the foregoing reasons, the Court finds PPG's Motion (Dkt. 192) is hereby **GRANTED**.

**IT IS ORDERED** that PPG shall be granted leave to take the depositions of Scott Antony, Manjula Kekulthotuwa, and Simon Cooper.

**IT IS FURTHER ORDERED** that, pursuant to this matter's Third Amended Scheduling Order (Dkt. 165), PPG shall depose Scott Antony, Manjula Kekulthotuwa, and Simon Cooper no later than **July 30, 2021**.

**So ORDERED and SIGNED this 29th day of June, 2021.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE